UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWNTEL MURRAY, an individual; BRION MURRAY, an individual; MYAH MURRAY, a minor, by and through her guardian ad litem, MARIALNEZ TENORIO; and KYRO MURRAY, a minor, by and through his guardian ad litem, MARIALNEZ TENORIO,<br><br>        Plaintiffs,<br><br>v.<br><br>CAMP PENDLETON & QUANTICO HOUSING, LLC, a Delaware limited liability company, et al.,<br><br>        Defendants. | Case No.: 20-cv-01286-AJB-KSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART JOINT PETITION TO APPROVE MINOR'S COMPROMISE**<br><br>**[Doc. No. 42]** |

  Plaintiffs Shawntel and Brion Murray and their minor children, Myah and Kyro Murray, (hereafter "Myah" and "Kyro" or, collectively, the "minors") brought this action against defendants alleging that an apartment leased by plaintiffs from defendants was beset by mold, loose carpeting and other safety hazards which adversely affected plaintiffs' health. *See generally* Doc. No. 1-2. On April 22, 2021, the parties informed the Court they had reached a settlement. *See* Doc. No. 38. Pursuant to Civil Local Rule 17.1(a), the parties

seek the Court's approval of the settlement of the minors' claims. On May 10, 2021, the Honorable Anthony J. Battaglia conferred jurisdiction to the undersigned for the limited purpose of approving the minors' compromise. Doc. No. 41.

Now before the Court is the parties' Joint Petition for Minors' Compromise (the "Petition" or "Pet."). Doc. No. 42. The Petition is supported by the declarations of plaintiffs' counsel and the minors' mother, completed Judicial Council Forms MC-350 for Myah and Kyro, and a copy of plaintiffs' counsel's retainer agreement. *See* Doc. Nos. 42-1, 42-2. The Court has carefully reviewed the Petition and the supporting documents. For the reasons stated below, the Petition is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

**A. Plaintiffs' Claims and the Minors' Injuries**

As alleged in the Complaint, plaintiffs leased and resided at a property owned and managed by defendants from July 16, 2018 through January 21, 2020. Plaintiffs allege that defendants failed to maintain the property in habitable condition. As is relevant here, among the alleged dangerous conditions in the property was toxic mold that defendants failed to repair or remediate despite repeated complaints from plaintiffs. The resulting poor air quality caused plaintiffs to suffer respiratory symptoms and other illnesses. Myah experienced coughing, wheezing, sneezing and constipation. Kyro, who was born in September 2019, was hospitalized for oxygen deficiency in January 2020.

During the time plaintiffs leased the property, they occasionally went to stay with family in New Mexico, at which time their illnesses and symptoms would abate, only to recur upon their return to San Diego. In January 2020, plaintiffs' family doctor stated that he suspected that mold was the cause of their symptoms. A third-party inspector hired by defendants confirmed that there was mold in the home. Plaintiffs were moved to temporary housing, but ultimately chose to move rather than return to defendants' property. Plaintiffs vacated the property in February 2020.

Myah and Kyro assertedly sought medical care and treatment for their ailments on several occasions while living at defendants' property. Doc. No. 42-1 at 7, 34. However,

plaintiffs indicate in their Petition that Myah and Kyro have completely recovered from their mold-related ailments, such that ongoing and future care are not necessary. *Id.*

**B.    Procedural History**

On May 26, 2020, plaintiffs filed this action against defendants in San Diego Superior Court, asserting causes of action for, *inter alia*, negligence, gross negligence, premises liability and rent abatement. Doc. No. 1-2. Defendants removed the action to this Court on July 9, 2020 and answered the Complaint on July 16, 2020. Doc. Nos. 1, 3. At the time of the settlement, fact discovery was nearing a close and defendants' motion to dismiss for lack of jurisdiction was pending before the District Court. *See* Doc. Nos. 20, 28, 30. As noted, on April 22, 2021, the parties advised the Court that they had reached a settlement. Doc. No. 38. The parties' Petition followed on May 12, 2021.

## II.    LEGAL STANDARDS

District Courts have a duty to safeguard the interests of minors in litigation. *Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983); *see also* Fed. R. Civ. P. 17(c) (requiring district courts to "appoint guardian *ad litem*…to protect a minor or incompetent person who is unrepresented in an action"). When parties settle an action involving a minor litigant, the Court must "'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (quoting *Dacanay v. Mendoza,* 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also* CivLR 17.1(a) (providing that "[n]o action by or on behalf of a minor or incompetent will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment."). The Court must conduct this inquiry "even if the settlement has been recommended or negotiated by the minor's parent or guardian *ad litem*." *Salmeron,* 724 F.2d at 1363.

Where, as here, a federal court exercises diversity jurisdiction over the minor plaintiffs' state law claims, the settlement should be evaluated with reference to applicable state law. *See DeRuyver v. Omni La Costa Resort & Spa, LLC*, Case No. 3:17-cv-0516-H-AGS, 2020 WL 563551, at *2 (S.D. Cal. Feb. 4, 2020) (citation omitted). Under California

state law, the court must determine whether the compromise is "in the minor's best interests," with "broad power" "to say who and what will be paid from the minor's money – as well as direct certain individuals to pay it." *Goldberg v. Superior Court*, 23 Cal. App. 4th 1378, 1382 (1994). Further, the Ninth Circuit directs that a court should approve a minor's compromise "[s]o long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases …." *Robidoux*, 638 F.3d at 1182. Although *Robidoux* is limited to settlement of federal claims, the Court nevertheless finds its guidance instructive.

### III.   DISCUSSION

**A.   The Settlement Is Reasonable and in the Minors' Best Interests**

As stated in the Petition, plaintiffs have agreed to settle their claims for gross consideration of $67,000, allocated as follows: $58,100.00 (86.7%) to Shawntel and Brion Murray, collectively; $4,900.00 (7.3%) to Myah; and $4,000.00 (6%) to Kyro. Pet. at 4; Doc. No. 42-1 at 3. Plaintiffs represent that the parents' portion of the settlement proceeds is significantly higher than that of the minors to recompense them for rent payments made on the property, but that "the sums allotted" to the minors are nevertheless "reflective of the medical complications [they] suffered due to exposure of toxic mold." Doc. No. 42-1 at 17, 43. The minors' guardian *ad litem*, Marialnez Tenorio, has agreed to the settlement and its terms on the minors' behalf. *Id.* at 3, 15, 44.

Pursuant to Section 3401 of the California Probate Code, the settlement proceeds for Myah and Kyro, less any costs and fees, will be delivered to their parents to be held in trust until each minor reaches the age of majority.[1]  Pet. at 4. Shawntel Murray, the minors'

---

[1] California Probate Code, Section 3401, provides as follows:

> (a) Where a minor does not have a guardian of the estate, money or other property belonging to the minor may be paid or delivered to a parent of the minor entitled to the custody of the minor to be held in trust for the minor until the minor reaches majority if the requirements of subdivision (c) are satisfied.

\*\*\*

mother, declares that she is the minors' legal guardian, and that she will maintain any settlement proceeds in trust for Myah and Kyro. *See* Doc. No. 42-2 at 2.

The Court's research reveals a wide range of verdicts and settlements within the Ninth Circuit for respiratory symptoms and illnesses caused by mold exposure. At one end of the spectrum, there are six- and seven-figure recoveries for minors who developed health issues from alleged mold exposure in a rental property. *See Charvat v. San Diego Family Housing LLC*, 2019 WL 6131144 (Cal. Sup. Ct. Sept. 20, 2019) (jury awarded over $1 million to two minors for mold-related ailments); *see also Cassiano v. Lee*, 2019 WL 8839909 (Cal. Sup. Ct. Feb. 5, 2019) ($174,000 settlement for two minors who suffered nasal congestion, sneezing, asthma, wheezing and respiratory symptoms due to mold). On the other, there are reports of defense verdicts in mold-exposure cases, including one in which plaintiff's mold evidence was excluded shortly before trial. *Bokkes v. Plotkin*, 2014 WL 8396231 (Cal. Sup. Ct. Dec. 23, 2014) (verdict for defendants after plaintiff's mold evidence excluded); *see also J.G.*, pro ami, *Rivera v. Antigua Bay Apartments Las Vegas L.P.*, 2018 WL 9596652 (D. Nev. May 9, 2018) (arbitration award in favor of property owner). Notwithstanding these examples, the gross recovery for both Myah and Kyro are within the accepted range of settlements for similar injuries due to mold exposure within this Circuit.[2] Accordingly, the Court finds that the gross settlement amounts for Myah and Kyro are reasonable.

---

(c) This section applies only if both of the following requirements are satisfied:

    (1) The total estate of the minor, including the money and other property to be paid or delivered to the parent, does not exceed five thousand dollars ($5,000) in value.

    (2) The parent to whom the money or other property is to be paid or delivered gives the person making the payment or delivery written assurance, verified by the oath of such parent, that the total estate of the minor, including the money or other property to be paid or delivered to the parent, does not exceed five thousand dollars ($5,000) in value.

[2] *See, e.g., In re O.H.*, 2011 WL 3793390 (Cal. Sup. Ct. Feb. 25, 2011) ($1,500 for minor's cough, runny nose and low-grade fever from mold exposure); *Jewett v. Citrus Ave. Partners LLC*, 2011 WL 4732830 (Cal. Sup. Ct. June 14, 2011) ($2,550 for minor who developed hay fever and asthmatic bronchitis due to mold exposure); *Palazios v. Salcedo*, 2016 WL 9131847 and 2016 WL 8224622 (Cal. Sup. Ct. Oct. 5,

The Court also finds that the proposed settlement is in the minors' best interests. The settlement was reached near the close of fact discovery, when plaintiffs and their counsel were well-informed of the evidence in support of, and adverse to, their claims. The settlement obviates the need to retain experts, complete expert discovery, and prepare or defend against summary-judgment and *Daubert* motions. It also eliminates the risk presented by defendants' pending motion to dismiss for lack of jurisdiction. And, as demonstrated by the foregoing review of jury verdicts, even if the case proceeded to trial – itself an expensive undertaking – there is no way of knowing whether the outcome would have been favorable to plaintiffs. In short, the settlement allows Myah, Kyro and their parents to avoid the costs, risks, and time commitment of pursuing the case through trial, and fairly compensates the minors for their past injuries.

For these reasons, and upon consideration of the facts of the case, plaintiffs' claims, and recoveries in similar actions, the Court concludes that the settlement is fair and reasonable, and in the minors' best interests.

## B. Attorneys' Fees and Litigation Costs

In addition to assessing whether the Settlement is fair and reasonable, the Court must also approve the attorney's fees and costs to be paid for representation of a minor. *See* Cal. Prob. Code. § 3601. Where counsel represents a minor on a contingency fee basis, courts in this District and others adopt "a California presumption that a contingency fee award of 25% is reasonable for the representation of a minor plaintiff and any greater percentage requires a showing of good cause and extraordinary services." *Motlagh v. Macy's*

---

2016) ($5,000 for minor who developed general respiratory symptoms after exposure to mold); *Cruz v. Uribe*, 2015 WL 3485546 (Cal. Sup. Ct. Mar. 27, 2015) ($5,000 for minor's respiratory and dermatological symptoms attributed to water leaks, mold and other property defects); *Amador v. Shenky*, 2016 WL 6157883 (Cal. Sup. Ct. Mar. 29, 2016) ($5,000 to each minor plaintiff for runny noses and coughs caused by mold); *Horne v. Nadine T. Chastang Trust*, 2015 WL 9595463 (Cal. Sup. Ct. Nov. 4, 2015) ($9,366 for minor complaining of mold-related symptoms including respiratory problems); *F.H., pro ami, Romero v. Prihisztal*, 2016 WL 7973942 (Cal. Sup. Ct. Feb. 9, 2016) ($15,000 for minor who suffered asthma flare-ups and cough from mold exposure in rental property).

*Corporate Servs., Inc.*, Case No. 19-cv-00042-JLB, 2020 WL 7385836, at *6 (S.D. Cal. Dec. 16, 2020) (collecting cases).

Here, despite the parents' antecedent agreement to a 40% contingency fee, plaintiff's counsel requests only 25% of each minor's recovery "pursuant to California law." Doc. No. 42-1 at 18, 24, 45, 51. In dollar figures, plaintiff's counsel requests $1,000.00 be paid from Kyro's settlement proceeds and $1,225.00 be paid from Myah's settlement proceeds. *See id.* at 10, 37. Having considered the amount of the fee in proportion to the value of the services performed, the results obtained, the value of counsel's time and labor, and the risks undertaken by counsel in representing plaintiffs on a contingency-fee basis, the Court finds that plaintiff's request for 25% in fees to be paid from each minor's settlement proceeds is fair and reasonable. *See* Cal. R. Ct. 7955(b) (identifying factors for the Court's consideration in evaluating fee requests).

Plaintiffs' counsel has also incurred $4,318.90 in costs during the litigation for filing fees, service of process, and deposition transcripts. Doc. No. 42-1 at 10-11. Counsel has not been reimbursed for any of these expenditures, and plaintiffs propose that that counsel's costs be paid from the settlement proceeds "divided equally among the 4 plaintiffs." Doc. No. 42-1 at 18, 45. Considering the history of the litigation, the Court finds the costs incurred by counsel were reasonable and necessary, and must be repaid from the settlement funds. However, the Court finds the proposal to allocate counsel's costs equally among the minors and their parents is not reasonable.

A one-fourth share of counsel's costs is $1,079.73. Requiring each plaintiff to pay this amount irrespective of his or her proportionate share of the settlement leads to the absurd result that more than 25% of Kyro's recovery, and approximately 22% of Myah's recovery, is consumed by counsel's costs. In contrast, only 4% of the parents' gross recovery will be spent on costs. As noted, nearly 87% of the gross settlement has been apportioned to Shawntel and Brion Murray. Pet. at 4. Plaintiffs explain that the parents' "high" recovery vis-à-vis the minors is necessary because the parents paid rent on an allegedly uninhabitable property for approximately 18 months, thereby incurring

substantial economic losses. *See* Doc. No. 42-1 at 14. The Court accepts this explanation, but observes that if the parents suffered comparatively more than the minors due to defendants' alleged wrongful conduct, they have also benefitted comparatively more than the minors from the settlement. That plaintiffs have allocated a considerable majority of the settlement proceeds to Shawntel and Brion Murray confirms that common-sense conclusion.

Therefore, the Court approves counsel's fee request and approves counsel's costs in the aggregate, but denies plaintiffs' request to allow $1,079.73 to be deducted from each minor's recovery for costs. Instead, costs shall be apportioned and paid from the gross settlement proceeds according to the settlement allocation set forth in the Petition: Kyro shall be responsible for 6% of counsel's costs ($259.13) and Myah shall be responsible for 7.3% of counsel's costs ($315.28). The remainder of counsel's costs ($3,744.49) shall be paid from Shawntel and Brion Murray's settlement proceeds.

## ORDER

For the reasons stated above, the Joint Petition to Approve Minor's Compromise [Doc. No. 42] is **GRANTED IN PART** and **DENIED IN PART**. The Court finds that the proposed Settlement is fair and reasonable and in the best interests of minor plaintiffs Myah Murray and Kyro Murray. As modified herein, the Court also finds counsel's request for fees and costs is fair and reasonable. The Court further **ORDERS** as follows:

1. The Court approves the gross settlement amount of **$67,000** and the allocation of 7.3% of the settlement proceeds to Myah Murray, 6% of the settlement proceeds to Kyro Murray, and the remaining 86.7% of the settlement proceeds to Shawntel and Brion Murray, as stated in the Joint Petition [Doc. No. 42];

2. Defendants shall pay **$4,900.00** to plaintiffs in settlement of Myah Murray's claims. Plaintiffs' counsel shall deduct **$1,225.00** in attorneys' fees and **$315.28** in costs from this payment. Shawntel Murray, Myah Murray's mother and legal guardian, shall hold the remaining **$3,359.72** in trust for Myah Murray until Myah Murray reaches the age of majority;

3. Defendants shall pay **$4,000.00** to plaintiffs in settlement of Kyro Murray's claims. Plaintiffs' counsel shall deduct **$1,000.00** in attorneys' fees and **$259.13** in costs from this payment. Shawntel Murray, Kyro Murray's mother and legal guardian, shall hold the remaining **$2,740.87** in trust for Kyro Murray until Kyro Murray reaches the age of majority;

4. Defendants shall pay **$58,100.00** to plaintiffs in settlement of Shawntel and Brion Murray's claims. Plaintiff's counsel shall deduct attorneys' fees and costs from this payment consistent with the terms of this Order; and

5. Counsel for the parties shall attend a telephonic Settlement Disposition Conference on **July 16, 2021** at **10:30 a.m**. Counsel shall call the Court's conference line (1-877-873-8017) and dial access code 2924630 to join the conference. If a motion for dismissal with prejudice is filed before July 9, 2021, the Court will vacate the Settlement Disposition Conference.

**IT IS SO ORDERED.**

Dated: June 17, 2021

Hon. Karen S. Crawford
United States Magistrate Judge

9

20-cv-01286-AJB-KSC